UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| VINCENT BARRASSO, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | No. 1:15-cv-13098-ADB |
| MACY'S RETAIL HOLDINGS, INC., | * | |
| | * | |
| Defendant. | * | |

**ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Plaintiff Vincent Barrasso ("Mr. Barrasso") filed this action against his former employer, Macy's Retail Holdings, Inc. ("Macy's"), alleging age discrimination, disability discrimination, and unlawful retaliation, all in violation of the Massachusetts Fair Employment Practices Act, Mass. Gen. Laws c. 151B. Mr. Barrasso initially filed his Complaint in Massachusetts Superior Court, and Macy's removed the case to federal District Court on the grounds of diversity jurisdiction. After removal, Macy's filed a Motion to Compel Arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. [ECF No. 10], arguing that all of Mr. Barrasso's claims are subject to mandatory arbitration. For the reasons set forth in this Memorandum and Order, Macy's Motion is ALLOWED, and this action is STAYED pending the completion of arbitration.

## I.    BACKGROUND

### A.  Mr. Barrasso's hire and termination

On October 11, 2011, Mr. Barrasso began working as a Sales Manager in the men's department of a Macy's store in Burlington, Massachusetts. See Complaint [ECF No. 7] (hereinafter "Compl.") ¶ 6. Mr. Barrasso, who was born in 1951, was approximately sixty years old when he began working for Macy's. See id. ¶ 4.

1

Mr. Barrasso alleges that he received a great performance review in 2011 and achieved increased sales in all departments. Compl. ¶¶ 7, 9. In May of 2012, Macy's appointed a new District Manager. Id. ¶ 13. Plaintiff alleges that the new District Manager instructed Macy's sales managers to "get rid of" underperforming associates. Id. ¶¶ 18-19. Subsequently, the Assistant Store Manager in Burlington had a conversation with Mr. Barrasso, in which the manager identified several associates in Mr. Barrasso's departments who should be "coached out" of their positions (i.e., dismissed). Id. ¶ 21. Those individuals included a 72-year-old sales associate, a 67 year old sales associate, and someone who had worked for Macy's for 20 years. Id. ¶ 22. Mr. Barrasso alleges that he protested to the Human Resource Manager, telling her that it would be wrong to terminate these employees, and that he refused to do so. Id. ¶¶ 25-26. The Human Resource Manager allegedly "agreed and conceded that there were younger associates doing worse on their scorecards." Id. ¶ 27.[1]

On August 25, 2013, Mr. Barrasso allegedly injured his back while closing the store. Id. ¶¶ 28-29. He took two days off from work, but when he returned, the pain was intolerable. Id. ¶¶ 33-35. He later sought medical attention and was told he had a pinched nerve. Id. ¶ 36. Mr. Barrasso made an appointment to see a neurosurgeon two weeks later. Id. ¶ 38. In the meantime, he took two additional days off from work, "despite pressure that was being placed upon him by the Assistant Store Manager," who allegedly called Mr. Barrasso and sent at least three text messages instructing him to return to work immediately. Id. ¶ 39. Mr. Barrasso returned to work on August 30, 2013 and allegedly worked for two more weeks, despite his pain. Id. ¶ 40. On September 13, 2013, Mr. Barrasso saw a neurosurgeon, who prescribed medication, physical

---

[1] It is not clear from the Complaint whether any sales associates were actually terminated from their positions.

therapy, and a week's rest from work. <u>Id.</u> ¶ 43. Mr. Barrasso returned to work at Macy's one week later, but continued to experience pain. <u>Id.</u> ¶ 44. The doctor told Mr. Barrasso to take eight to nine days off work, and instructed that when he returned to work, he should not lift more than 15 pounds or perform any twisting maneuvers. <u>Id.</u> ¶¶ 46-49.

When Mr. Barrasso returned to work at Macy's, he found that he had "a lot of catching up to do," and he alleges that the Assistant Store Manager put "considerable pressure" on him to address certain issues that had arisen during his absence. <u>Id.</u> ¶ 51. On October 25, 2013, Mr. Barrasso was called into a meeting with the Store Manager, Julie Emery. <u>Id.</u> ¶ 52. She informed him that his performance was "not up to company standards" and terminated his employment with Macy's. <u>Id.</u> ¶ 54. Mr. Barrasso maintains that he never received any documentation stating the reason(s) he was fired. <u>Id.</u> ¶ 55. He also alleges that he was replaced by a "22-year-old college graduate." <u>Id.</u> ¶ 57.

Mr. Barrasso further alleges that sometime prior to his termination, he had attended a sales meeting, during which Ms. Emery announced that Macy's planned to recruit "millennial age" candidates for sales' manager positions. <u>Id.</u> ¶ 59. She allegedly looked at Mr. Barrasso and stated "Vincent is not a millennial." <u>Id.</u> ¶ 61.

### B.  The Solutions InSTORE Arbitration Program

Macy's uses a comprehensive early dispute resolution program known as "Solutions InSTORE" to resolve employment disputes. <u>See</u> Declaration of Matthew Melody [ECF No. 13] ("Melody Decl.") ¶ 4. Solutions InSTORE, which applies to all Macy's employees, contains four separate steps for the resolution of disputes. <u>Id.</u> ¶¶ 4, 8. If a dispute is not resolved early in the process, the fourth and final step is to submit the claim to binding arbitration. <u>Id.</u> ¶ 8. All employees, however, are given the choice to opt out of the binding arbitration program by mailing back an "opt out" election form within 30 days from their date of hire. <u>Id.</u> ¶ 10.

Mr. Barrasso claims that at the time of his hiring in October 2011, Macy's presented him with a "blizzard" of documents and forms that he was told to sign electronically. See Affidavit of V. Barrasso [ECF No. 14-1] ("Barrasso Aff.") ¶ 4. Mr. Barrasso alleges that he signed the forms within the first hour or two of being hired because he "wanted to be cooperative," but he claims that he "did not fully understand the import" of some of the documents. Id. ¶ 6. He also alleges that Macy's did not advise him to consult with counsel before signing the documents. Id. ¶ 7.

One of the documents Mr. Barrasso electronically signed on October 11, 2011 was the Solutions InSTORE New Hire Acknowledgement. See Declaration of R. Veeraraghavan [ECF No. 12] ("Veeraraghavan Decl.") ¶¶ 4, 14. By signing the New Hire Acknowledgement, Mr. Barrasso confirmed that he had received a copy of the "Solutions InSTORE brochure and Plan Document." Id. Ex. H. He also confirmed that he understood he was "covered by" and "agreed to use all 4 steps of Solutions InSTORE automatically by taking or continuing a job in any part of Macy's Inc." Id. The New Hire Acknowledgement explained that "[t]his means that if at any time I have a dispute or claim relating to my employment, it will be resolved using the Solutions InSTORE process described in the brochure and Plan Document." Id. The New Hire Acknowledgement further explained that the InSTORE process includes arbitration, where disputes are "resolved by a professional not affiliated with Macy's, Inc. in an arbitration proceeding, instead of by a judge or jury in a court proceeding." Id. Finally, by signing the New Hire Acknowledgement, Mr. Barrasso confirmed that he understood that he could opt out of the InSTORE arbitration procedure by mailing in an opt-out election form within 30 days of hire. See id. Mr. Barrasso, however, did not return the opt-out election form. Melody Decl. ¶ 29.

The operative arbitration agreement is found in the Solutions InSTORE brochure and

Plan Document, which Macy's claims it provided to Mr. Barrasso at the time of his hire. <u>See</u>

Melody Decl. ¶ 21 & Ex. B.[2]

Article 2 of the "Arbitration Rules and Procedures" provides in relevant part as follows:

> Except as otherwise limited, all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state or local decisional or statutory law ("Employment-Related Claims"), shall be settled exclusively by final and binding arbitration. Arbitration is administered by the American Arbitration Association ("AAA") under these Solutions InSTORE Early Dispute Resolution Rules and Procedures and the employment arbitration portion of the AAA's Employment Arbitration Rules and Mediation Procedures. Arbitration is held before a neutral, third-party Arbitrator.
>
> . . .
>
> All unasserted employment-related claims as of January 1, 2007 arising under federal, state or local statutory or common law, shall be subject to arbitration. Merely by way of example, Employment-Related Claims include, but are not limited to, claims arising under the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA), the Fair Labor Standards Act (FLSA), 42 U.S.C. § 1981 . . . state discrimination statues, state statutes, and/or common law regulating employment termination, misappropriation, breach of the duty of loyalty, the law of contract or the law of tort; including, but not limited to, claims for malicious prosecution, wrongful discharge, wrongful arrest/wrongful imprisonment, intentional/negligent infliction of emotional distress or defamation.

Melody Decl. Ex. B [ECF No. 13-2], pp. 25-26.

Article 3 of the Plan Document goes on to provide that the employee and the Company

"agree to resolve through arbitration all claims described in or contemplated by Article 2 above,"

and further notes that if either party files a lawsuit in court to resolve claims subject to

---

[2] Mr. Barrasso does not dispute that he received a copy of the Plan Document and brochure at the time he was hired. Rather, he claims that he did not understand it.

arbitration, "both agree that the court shall dismiss the lawsuit and require the claim to be
resolved through the Solutions InSTORE program." <u>Id.</u> p. 26.

### C.  Motion to Compel Arbitration

Mr. Barrasso's Complaint asserts claims for age discrimination (Counts I and II);
disability discrimination in violation; (Count III); and unlawful retaliation (Count IV), all in
violation of Mass. Gen. Laws c. 151B, § 4. <u>See</u> Compl.

Macy's now moves to dismiss or stay this action and compel Mr. Barrasso to submit his
Chapter 151B claims to arbitration. Macy's argues that Mr. Barrasso consented to the Solutions
InSTORE arbitration program by signing the New Hire Acknowledgement Form on October 11,
2011, and failing to opt out of the program by returning the election form within 30 days. Macy's
further contends that Mr. Barrasso's Chapter 151B claims clearly fall within the ambit of the
arbitration clause, which covers "all employment-related legal disputes, controversies or claims
arising out of, or relating to, employment or cessation of employment, whether arising under
federal, state or local decisional or statutory law."

Mr. Barrasso raises three arguments in opposition to Macy's motion. First, he argues that
the arbitration agreement is unenforceable as an unconscionable contract of adhesion, which he
entered into under economic duress and without the advice of counsel. Second, Mr. Barrasso
contends that the arbitration agreement is inapplicable to his statutory claims under Chapter
151B, because the agreement does not inform the employee "in clear and unmistakable terms"
that Chapter 151B claims are subject to arbitration, as required by <u>Warfield v. Beth Israel
Deaconess Medical Center</u>, 454 Mass. 390, 398 (2009). Third, Mr. Barrasso argues that the
arbitration clause is unenforceable because the parties have not engaged in the first three steps of
the Solutions InSTORE dispute resolution program, which must precede the fourth and final step
of binding arbitration.

## II.   DISCUSSION

### A.  Legal Standard

Under the Federal Arbitration Act ("FAA"), "a written provision in a contract 'to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011) (quoting 9 U.S.C. § 2) (omission in original). The FAA was enacted primarily to "overcome judicial hostility to arbitration agreements." See Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 272 (1995). The provisions of the Act "embod[y] the national policy favoring arbitration and place[] arbitration agreements on equal footing with all other contracts.'" Soto-Fonalledas, 640 F.3d at 474 (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006)).[3]

---

[3] Mr. Barrasso argues that the FAA does not apply to this case, because he alleges only state-law claims, and the Court's federal subject-matter jurisdiction is based upon diversity. It is well-settled, however, that the FAA applies regardless of whether the Court's subject-matter jurisdiction is founded upon the existence of a federal question or diversity of citizenship. See Southland Corp. v. Keating, 465 U.S. 1, 23 (1984) (citing Prima Paint v. Flood & Conklin, 388 U.S. 395, 404-05 (1967)). The FAA applies to all contracts "evidencing a transaction involving [interstate] commerce." 9 U.S.C. § 2; see Southland Corp., 465 U.S. at 14-15. Thus, "[t]he Act, which rests on Congress' authority under the Commerce Clause, supplies not simply a procedural framework applicable in federal courts; it also calls for the application, in state as well as federal courts, of federal substantive law regarding arbitration." Preston v. Ferrer, 552 U.S. 346, 349 (2008). Accordingly, as long as the employment contract in question evidences a transaction involving interstate commerce, the FAA governs. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 117-19 (2001). Mr. Barrasso does not argue that his employment agreement with Macy's did not involve interstate commerce, and the Court finds the interstate commerce element to be satisfied here. Mr. Barrasso is a New Hampshire resident, and he worked at a Macy's store in Burlington, Massachusetts. Compl. ¶¶ 1, 3. Macy's Retail Holdings, Inc. is a New York corporation with its principal place of business in Ohio. See Notice of Removal [ECF No. 7], ¶ 4. Accordingly, the employment contract at issue sufficiently implicates interstate commerce, and the FAA therefore governs in this case. See Societe Generale de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co., 643 F.2d 863, 867 (1st Cir. 1981) (holding that the term "commerce" in the FAA is to be "broadly construed"); Coady v. Ashcraft & Gerel, 996 F. Supp. 95,  100 (D. Mass. 1998) (employment agreement between

"When an enforceable arbitration agreement exists between the parties, a court may enforce that agreement by staying existing litigation pending arbitration of the parties, 9 U.S.C. § 3, or compelling the parties to arbitrate, 9 U.S.C. § 4." DeLuca v. Bear Sterns & Co., 175 F. Supp. 2d 102, 106-07 (D. Mass. 2001). A party seeking to compel arbitration under the FAA "must demonstrate that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." Soto-Fonalledas, 640 F.3d at 474 (internal quotations and citation omitted).

### B.  Unconscionability

Mr. Barrasso first argues that the Solutions InSTORE arbitration agreement is unenforceable, because it is an unconscionable "contract of adhesion" that he signed under economic duress. Specifically, Mr. Barrasso alleges that at the time he was hired, he was instructed to read eleven documents electronically and sign off on nine of those documents. Mr. Barrasso notes that while he did not fully understand the documents, he signed them because he did not want to be viewed as a potentially quarrelsome employee. He offers no explanation, however, as to why he did not mail back the "opt-out" election form within the time allotted.

Under the FAA, agreements to arbitrate are "valid, irrevocable, and enforceable, *as a matter of federal law* . . . 'save upon such grounds as exist at law or in equity for the revocation of *any* contract.'"  Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987) (emphasis in original) (quoting 9 U.S.C. § 2) (internal citation omitted). The so-called "saving clause" in Section 2 of

---

Massachusetts-based attorney and Washington, D.C.-based law firm, whereby attorney agreed to provide and oversee provision of legal services to certain of firm's clients, satisfied interstate commerce requirement of FAA), rev'd on other grounds, 223 F.3d 1 (1st Cir. 2000).

the FAA means that agreements to arbitrate may be "invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability' . . . ." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011). State law governs when determining whether a generally applicable contract defense is applicable. See Perry, 482 U.S. at 492 n.9 ("[S]tate law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.") (emphasis in original). Thus, where Mr. Barrasso argues that the arbitration agreement is unenforceable based on an unconscionability defense, the Court must apply "general principles of state contract law" to determine whether a valid agreement to arbitrate exists. Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 552 (1st Cir. 2005) (citing Perry, 482 U.S. at 492 n.9).[4]

Under Massachusetts law,[5] "[u]nconscionability must be determined on a case-by-case basis, with particular attention to whether the challenged provision could result in oppression and unfair surprise to the disadvantaged party . . . ." Waters v. Min Ltd., 412 Mass. 64, 68 (1992). "If the sum total of the provisions of a contract drive too hard a bargain," the court will not assist its enforcement. Id. "[T]o prove that the terms of a contract are unconscionable, a plaintiff must

---

[4] "A recurring question under § 2 is *who* should decide whether 'grounds ... exist at law or in equity' to invalidate an arbitration agreement.'" Preston, 552 U.S. at 353 (emphasis added). The Supreme Court has held that "attacks on an entire contract's validity, as distinct from attacks aimed at the arbitration clause alone, are within the arbitrator's ken." Id. (citing Prima Paint Corp., 388 U.S. at 403-04). In contrast, discrete challenges to the validity of the arbitration clause are "subject to initial court determination." Nitro-Lift Techs., L.L.C. v. Howard, 133 S. Ct. 500, 503 (2012). For purposes of this Motion, the Court construes Mr. Barrasso's unconscionability argument to challenge the validity of the arbitration clause in particular. Therefore, the issue is appropriately resolved by the Court in the first instance. See DeLuca, 175 F. Supp. 2d at 114 (addressing merits of employee's argument that arbitration agreement was a contract of adhesion and signed under duress).

[5] Plaintiff assumes that Massachusetts law applies. Because neither party objects to the application of Massachusetts law or suggests that the law of another state should be applied, the Court will apply Massachusetts law here.

show both substantive unconscionability (that the terms are oppressive to one party) and procedural unconscionability (that the circumstances surrounding the formation of the contract show that the aggrieved party had no meaningful choice and was subject to unfair surprise)." Machado v. System4 LLC, 471 Mass. 204, 218 (2015) (internal quotations and citations omitted).

Here, Mr. Barrasso does not argue that the terms of the arbitration agreement are substantively unfair to him. Instead, he focuses on procedural unfairness, arguing that (1) Macy's presented him with a "blizzard" of documents to review and sign; (2) he signed the documents without fully understanding their terms, because he was a "new employee who needed a job" and "wanted to be cooperative;" and (3) Macy's did not advise him to consult with counsel before signing the documents. See Barrasso Aff. ¶¶ 4-7.

These allegations do not demonstrate that the arbitration agreement was unconscionable. First, the fact that the arbitration agreement may be a "contract of adhesion" does not, standing alone, render the arbitration agreement unconscionable. McInnes v. LPL Fin., LLC, 466 Mass. 256, 266 (2013). "Contracts of adhesion are enforceable unless they are unconscionable, offend public policy, or are shown to be unfair in the particular circumstances." Id. (internal quotations and alterations omitted). Similarly, the fact that Mr. Barrasso did not fully read and/or understand the documents does not make the arbitration agreement unconscionable. "Absent fraud, an individual 'who signs a written agreement is bound by its terms whether he reads and understands them or not.'" Bose Corp. v. Ejaz, 732 F.3d 17, 22 (1st Cir. 2013) (quoting Awuah v. Coverall N. Am., Inc., 703 F.3d 36, 44 (1st Cir. 2012)). Here, Mr. Barrasso does not allege any fraud on the part of Macy's. The Court also notes that Mr. Barrasso agreed to the InSTORE arbitration procedures at the outset of his employment relationship. This was an entirely

10

voluntary act – even if economically motivated – and there was no "gross disparity" in consideration exchanged by the parties. See Waters, 412 Mass. at 68. Furthermore, although Mr. Barrasso may have felt pressured to sign the "New Hire Acknowledgement" form on October 11, 2011, Macy's gave him an additional thirty days in which to opt out of the InSTORE arbitration program. He chose not to exercise this option. Because Mr. Barrasso has not demonstrated that Macy's employed "high-pressure" tactics; engaged in any misrepresentations; or that the "sum total" of the contract provisions drove "too hard a bargain," Waters, 412 Mass. at 68, the Court finds that the arbitration agreement is not void on the grounds of unconscionability.

### C. __Warfield__

Alternatively, Mr. Barrasso argues that the arbitration clause does not extend to his statutory discrimination and retaliation claims under Chapter 151B, relying on the Massachusetts Supreme Judicial Court's ("SJC") decision in Warfield v. Beth Israel Deaconess Medical Center, Inc., 454 Mass. 390, 398 (2009).

In Warfield, a terminated employee brought suit against her former employer in Massachusetts state court, alleging gender-based discrimination and retaliation in violation of Mass. Gen. Laws. c. 151B. Id. at 391. The employer moved to dismiss and compel arbitration, citing a provision of the operative employment agreement, which stated that "[a]ny claim, controversy or dispute arising out of or in connection with this Agreement or its negotiations shall be settled by arbitration." Id. at 392. The trial court denied the employer's motion to compel arbitration, and the SJC affirmed. Id. at 394. Although the SJC recognized that the employment agreement involved interstate commerce and was thus governed by the FAA, the court held that it would nonetheless apply "general principles of State contract law to determine whether a particular agreement requires arbitration of a claim." Id. at 396. In this regard, the SJC noted that Massachusetts' "State law principles of contract interpretation make clear that

11

considerations of public policy play an important role in the interpretation and enforcement of contracts," <u>id.</u> at 397, and that the Commonwealth had an "overriding governmental policy proscribing various types of discrimination, set forth in G.L. c. 151B." <u>Id.</u> at 398 (internal quotations and citation omitted).

In reliance on these principles, the <u>Warfield</u> court held that "an employment contract containing an agreement by the employee to limit or waive any of the rights or remedies conferred by G.L. c. 151B is enforceable only if such an agreement is stated in clear and unmistakable terms." <u>Id.</u> Applying this rule, the court held that the arbitration clause in the employee's contract was "insufficiently clear to constitute an enforceable agreement by Warfield to arbitrate her [Chapter 151B] claims." <u>Id.</u> at 402. The court found that when "[r]ead as a whole, the contract language . . .  suggests an intent to arbitrate disputes that might arise from or be connected to the specific terms of the [employment] agreement itself," but noted that "there is no contractual term dealing with discrimination." <u>Id.</u> Accordingly, the SJC held that the motion to compel arbitration of the employee's Chapter 151B claims was properly denied.

Mr. Barrasso argues that <u>Warfield</u> controls this case, and that the InSTORE arbitration agreement does not encompass his statutory claims under Chapter 151B, because such claims are not mentioned anywhere in the arbitration agreement, much less in "clear and unmistakable terms."

The Court does not agree. First, the Massachusetts SJC's holding in <u>Warfield</u> may have been abrogated by more recent U.S. Supreme Court authority interpreting and applying the FAA. Second, even assuming that <u>Warfield</u> is still good law, the Court finds that the parties' arbitration agreement clearly and unmistakably refers to employment-related claims, including those that

may arise under state statutes like Mass. Gen. Laws c. 151B. Accordingly, <u>Warfield</u> poses no bar to enforcing the arbitration clause in this case.

**1.   <u>Warfield</u> may be preempted by the FAA.**

In <u>Warfield</u>, the SJC went to considerable lengths to explain why its holding was "not inconsistent with the presumption of arbitrability embedded in the FAA." 454 Mass. at 399. Specifically, the court noted that the "interpretive rule" it set forth in that case:

> states only that as a matter of the Commonwealth's general law of contract, a private agreement that purports to waive or limit – whether in an arbitration clause or on some other contract provision – the employee's otherwise available right to seek redress for employment discrimination through the remedial paths set out in G.L. c. 151B, must reflect that intent in unambiguous terms.

<u>Id.</u> at 400.

One session of this Court, however, has held that the Massachusetts SJC erred when it "incorrectly 'appl[ied] general principles of State contract law to determine whether a particular agreement requires arbitration of a claim,'" because in cases governed by the FAA, the proper construction of arbitration clauses is a question of federal law. <u>United States ex rel. Hagerty v. Cyberonics, Inc.</u>, No. CV 13-10214-FDS, 2015 WL 7253675, at *8 (D. Mass. Nov. 17, 2015) (quoting <u>Warfield</u>, 454 Mass. at 396) (alteration in original). In <u>Cyberonics</u>, Judge Saylor found that applying the "clear and unmistakable terms" test set forth in <u>Warfield</u> "would not 'place [the arbitration agreement] upon the same footing as other contracts,' and would run afoul of the [FAA's] presumption of arbitrability whereby 'any doubts concerning the scope of an arbitrable issue should be resolved in favor of arbitration.'" <u>Id.</u> (first alteration in original) (internal citations omitted) (quoting <u>Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646</u>, 584 F.3d 513, 524 (3d Cir. 2009)).

Recent U.S. Supreme Court precedent also casts some doubt on Warfield's continued viability. In AT&T Mobility LLC v. Concepcion, 563 U.S. 333 (2011), two plaintiffs filed a federal lawsuit alleging that AT&T had engaged in fraud and false advertising by charging sales taxes on phones it had advertised as "free." 563 U.S. at 336-37. AT&T moved to compel arbitration under the terms of the customers' cellular phone contracts, which provided for arbitration of all disputes between the parties but prohibited customers from using class action procedures. Id. The plaintiffs opposed the motion to compel arbitration, arguing that the contract's prohibition on class actions made the arbitration provision unconscionable and unenforceable under California law, as announced by the Supreme Court of California in Discover Bank v. Superior Court, 36 Cal. 4th 148 (2005).[6] See Concepcion, 563 U.S. at 337-38.

Both the District Court and the Court of Appeals for the Ninth Circuit held that the arbitration provision was unconscionable under California law, and that the motion to compel arbitration should therefore be denied. 563 U.S. at 338. The Ninth Circuit also held that the California law "was not preempted by the FAA because that rule was simply 'a refinement of the unconscionability analysis applicable to contracts generally in California.'" Id. The U.S. Supreme Court granted certiorari and reversed, holding that the FAA preempted California's judicial rule regarding the unconscionability of class arbitration waivers in consumer contracts. Id. at 352.

In its analysis, the Court noted that when a state law "prohibits outright the arbitration of a particular type of claim," the preemptive effect of the FAA is straightforward – i.e., "the conflicting

---

[6] In Discover Bank, the Supreme Court of California held that under California law, contractual waivers of class actions are unenforceable when the waiver is "found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." 36 Cal. 4th 148, 162-63 (2005).

rule is displaced by the FAA." Id. at 341. The "inquiry becomes more complex," however, "when a doctrine normally thought to be generally applicable, such as duress or, as relevant here, unconscionability, is alleged to have been applied in a fashion that disfavors arbitration." Id. Although the FAA's saving clause "preserves generally applicable contract defenses," the Court noted that "nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." Id. at 343. Thus, although California's judicial rule was framed as an issue of "unconscionability" falling under the FAA's saving clause, the Supreme Court nonetheless held that "requiring the availability of class wide arbitration interferes with fundamental attributes of arbitration, and thus creates a scheme inconsistent with the FAA." Id. at 344.

It is not entirely clear whether the holding in Concepcion is fatal to the rule established by the Massachusetts SJC in Warfield. In a somewhat cryptic footnote in Concepcion, the Supreme Court noted that "[o]f course States remain free to take steps addressing the concerns that attend contracts of adhesion—for example, requiring class-action-waiver provisions in adhesive arbitration agreements to be highlighted. Such steps cannot, however, conflict with the FAA or frustrate its purpose to ensure that private arbitration agreements are enforced according to their terms." Id. at 347 n.6. Whether the "interpretive rule" set forth by the Massachusetts SJC in Warfield runs afoul of the Supreme Court's guidance appears to be an open question.

The current views of the Massachusetts SJC on this point are also unclear. In Crocker v. Townsend Oil Co., an employment case, the SJC held that releases of liability contained in settlement or termination of contract agreements are not enforceable with respect to statutory claims under the Massachusetts Wage Act, unless such releases are stated in "clear and unmistakable terms."  464 Mass. 1, 14 (2012). "In other words, the release must be plainly worded

and understandable to the average individual, and it must specifically refer to the rights and claims under the Wage Act that the employee is waiving." Id. In so holding, the court noted that the approach it took in Warfield was "instructive." Id.  Subsequently, in Machado v. System4 LLC, the SJC held that statutory claims brought under the Massachusetts Wage Act were arbitrable, but it declined to hold that arbitration clauses must make express reference to Wage Act claims to be enforceable under state law. 471 Mass. 204, 217 (2015). In dicta, the SJC further noted that "[e]ven if Massachusetts law did require an arbitration clause to specifically mention applicability to claims under the Wage Act, 'such a principle' might be 'preempted by the [FAA].'" Id. at 218 n.19 (quoting Awuah v. Coverall N. Am., Inc., 703 F.3d 36, 45 (1st Cir. 2012) and Concepcion, 563 U.S. at 341). Although the SJC did not directly address Warfield's continued viability in its decision, its citation to Concepcion shows that the court is well aware of the Supreme Court's evolving jurisprudence in this area.

Fortunately, the Court need not resolve this difficult preemption issue in the context of this case, because even assuming, without deciding, that Warfield is not preempted and applies here, the parties' Solutions InSTORE arbitration agreement satisfies Warfield's requirements.

### 2.   The Solutions InSTORE arbitration agreement satisfies Warfield.

Mr. Barrasso argues that the InSTORE arbitration agreement did not provide sufficient notice that statutory discrimination and retaliation claims under Chapter 151B were subject to arbitration. He contends that, in contrast to the "clear and unmistakable" terms required by Warfield, the arbitration agreement contains "wholly generic and boilerplate" language that "did not specifically inform [him] of what important rights he was waiving or surrendering." [ECF No. 14-2].

The Court disagrees. The arbitration clause clearly states that it applies to "all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or

*cessation* of employment, whether arising under federal, state, or local decisional or statutory law."
(emphasis added). Melody Decl. Ex. B. Further, the Plan Document discloses examples of such
claims, including discrimination claims under the Age Discrimination in Employment Act, as well
as "state discrimination statutes . . . and/or common law regulating employment termination." Id.

The fact that the arbitration clause does not expressly reference Chapter 151B is not
dispositive. In Warfield, the SJC pointed out that its holding "should not be understood to suggest
that parties entering into an employment (or any other) contract must specifically list every
possible statutory claim that might arise or else the claim will not be covered by an otherwise
'broad' arbitration clause." 454 Mass. at 400, n.16. Therefore, as long as the arbitration clause
"clearly and unmistakably" communicates that such claims are subject to arbitration, Warfield is
satisfied. See id.; see also Joule, Inc. v. Simmons, 459 Mass. 88, 100, n.15 (2011) (holding that
arbitration clause made "clear and unmistakable" reference to statutory employment
discrimination claims, where it covered disputes "relating to my employment and/or termination
of my employment (which includes without limitation, claims of discrimination, harassment,
hostile work environment, retaliation, or other wrongful termination claims)"); Dixon v. Perry &
Slesnick, P.C., 75 Mass. App. Ct. 271, 278 (2009).

Accordingly, even assuming Warfield applies to this case, it does not bar enforcement of
the parties' arbitration agreement.

**D.  Failure to exhaust Steps 1-3 of the InSTORE dispute resolution program**

Finally, Mr. Barrasso contends that the InSTORE arbitration agreement is
"unenforceable" because he did not participate in the first three steps of the InSTORE dispute-
resolution program. He insists that employees are *required* to complete Steps 1-3 before
proceeding to the fourth Step – binding arbitration. Thus, he argues that where he "never
participated in the previous three steps" of Macy's dispute resolution plan, he cannot be

17

compelled to arbitrate his claims. Macy's disputes this interpretation of the InSTORE Plan

Document, arguing that employees are not required to exhaust Steps 1-3 before proceeding to

arbitration, and that there is "no administrative or other requirement that they do so." See

Melody Decl. ¶¶ 9, 11.

The Court declines to address this argument, as it is more properly resolved by the

arbitrator. As discussed, *supra*, the parties have validly agreed to arbitrate all "employment-

related legal disputes, controversies or claims arising out of, or relating to, employment or

cessation of employment." Melody Decl. Ex. B. Therefore, the proper construction of the

InSTORE Plan Document, and its effect on Mr. Barrasso's Chapter 151B claims, is an issue for

the arbitrator, rather than the Court, to decide. See Howsam v. Dean Witter Reynolds, Inc., 537

U.S. 79, 84 (2002) ("'[P]rocedural questions which grow out of the dispute and bear on its final

disposition' are presumptively *not* for the judge, but for an arbitrator, to decide.") (emphasis in

original) (quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964)).

III.    **CONCLUSION**

For the foregoing reasons, Macy's Motion to Compel Arbitration [ECF No. 10] is

ALLOWED, and this action is hereby STAYED pursuant to 9 U.S.C. § 3, pending the

completion of arbitration.

**SO ORDERED.**

Dated:  April 12, 2016

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE